# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CRAIG C. KYLLONEN, *et al.*,

        Plaintiffs,

vs.

GNC FRANCHISING, LLC, *et al.*,

        Defendants.

Case No.: 2:18-cv-01526-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Set Aside Clerk's Entry of Default, (ECF No. 11), filed by Defendants GNC Franchising, LLC and General Nutrition Corporation (collectively "GNC"). Plaintiffs Craig C. Kyllonen ("Kyllonen"), Kypro Enterprises, LLC ("Kypro"), and K and K GNC, LLC ("K & K") (collectively "Plaintiffs") filed a Response, (ECF No. 12), and GNC filed a Reply, (ECF No. 13).

For the reasons discussed herein, GNC's Motion is **GRANTED**.

## I. BACKGROUND

The present Motion arises from the clerk of court's entry of default against GNC. (*See* Clerk's Entry of Default, ECF No. 9). Plaintiffs bring several contract-based causes of action against GNC for alleged breaches of four franchise agreements. (*See* Compl., ECF No. 1). Between 2008 and 2013, GNC granted franchise licenses to Kyllonen, entitling him to operate four retail stores in Nevada. (*Id.* ¶ 14). Kyllonen created two Nevada limited liability companies to operate the franchises, Plaintiffs Kypro and K & K. (*Id.* ¶¶ 4–5). The franchises ultimately failed due to financial distress, resulting in Plaintiffs and GNC blaming each other for breaching their respective contractual obligations.

Prior to Plaintiffs filing this action here, GNC filed a breach-of-contract complaint (the "PA Action") against Kyllonen on November 8, 2016, in the U.S. District Court for the Western District of Pennsylvania. (*See* Compl., *GNC Franchising, LLC, et al. v. Craig C. Kyllonen*, No. 2:16-cv-01692 (W.D. Pa. Nov. 8, 2016), Ex. 1 to Mot. to Set Aside, ECF No. 11-1). The PA Action concerns two of the same franchise agreements at issue in the instant case. (*Id.* ¶¶ 9–10); (*see also* Franchise Agreements, Exs. 1A, 1B, ECF Nos. 11-2, 11-3). GNC served Kyllonen on February 2, 2017, with a copy of the PA Action complaint and waiver-of-service form. (Decl. of Charles H. Saul ¶ 2, Ex. 23 to Mot. to Set Aside, ECF No. 11-23). In an effort to reach an out-of-court resolution, GNC voluntarily withdrew the PA Action and entered settlement negotiations with Kyllonen. (Mot. to Set Aside 2:12–20, ECF No. 11). After the settlement talks concluded unsuccessfully, GNC re-filed the PA Action. (*Id.* 2:21–23).

On the following day, August 16, 2018, Kyllonen, Kypro, and K & K filed their Complaint here, bringing claims arising from the franchise agreements that were the subject of the PA Action, in addition to two other franchise agreements between the parties. (*See* Compl. ¶ 14). Plaintiffs allege that GNC's failure to provide contracted-for financial services and documentation left Plaintiffs uninformed of the franchises' ensuing financial difficulties. (*Id.* ¶¶ 15–17). GNC allegedly withheld accounting support in a deliberate effort to ensure it would be able to acquire the franchises at below market value. (*Id.* ¶¶ 20–25). GNC also allegedly failed to uncover an embezzlement scheme at one the franchises, resulting in losses of $10,000 per month over the course of seven months. (*Id.* ¶ 18).

Based upon the alleged breaches of the franchise licenses and related agreements, Plaintiffs assert the following claims against GNC: (1) breach of contract; (2) unjust enrichment; (3) breach of fiduciary duty; (4) fraud; (5) negligent misrepresentation; (6) tortious interference with prospective contractual relations on behalf of Kyllonen; (7) tortious

interference with prospective contractual relations on behalf of Kypro and K & K; (8) breach of the implied covenant of good faith and fair dealing; and (9) consumer fraud. (*Id.* ¶¶ 28–83).

Plaintiffs served GNC on August 17, 2018, giving GNC until September 7, 2018 to respond, (ECF Nos. 6–7). Upon GNC's failure to respond, Plaintiffs moved for clerk's entry of default on August 19, 2018, which the clerk of court entered the next day. (*See* Mot. for Clerk's Entry of Default, ECF No. 8); (Clerk's Entry of Default, ECF No. 9).

On November 6, 2018, GNC filed the instant Motion, seeking to set aside the clerk's entry of default, (ECF No. 11).

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." To determine whether good cause exists, courts look to: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citation omitted). This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015) (quoting *Mesle*, 615 F.3d at 1091).

While the court considers the same factors prior to vacating an entry of default as it would for a default judgment, the test is less stringent when the court has not entered default judgment. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). Indeed, "[t]he court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). "[J]udgment by default is a drastic step appropriate only in extreme

circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091.

## III. DISCUSSION

GNC asserts that the failure to timely respond falls short of constituting culpability because it is attributable to a mere miscommunication between GNC's litigation counsel and GNC's in-house legal department. (Mot. to Set Aside 3:7–15, ECF No. 11). GNC further contends that the existence of meritorious defenses to Plaintiffs' claims and corresponding lack of prejudice to Plaintiffs warrant setting aside the clerk's entry of default. (*Id.* 6:11–11:21).

Plaintiffs oppose GNC's Motion on the basis that GNC's explanation for its untimely participation in this matter evinces a deliberate, strategic choice rather than a negligent oversight. (Resp. 6:6–8:11, ECF No. 12). Plaintiffs also argue that setting aside the clerk's entry of default would cause prejudice by forcing them to incur additional costs and fees in briefing GNC's anticipated motion to transfer venue. (*Id.* 8:13–28). Alternatively, Plaintiffs request that in the event the Court is persuaded by GNC, the Court should condition setting aside the clerk's entry of default on GNC's payment of attorneys' fees and a $25,000 bond for future litigation costs. (*Id.* 9:1–10:11).

The Court begins with GNC's Motion to Set Aside, followed by discussion of Plaintiffs' request for costs and attorneys' fees.

### A. Motion to Set Aside

#### *1) Culpability*

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988)). "'[I]ntentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat

a failure to answer as culpable, the movant must have acted with bad faith, such as an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (quoting *TCI Grp.*, 244 F.3d at 697). A defendant's culpability may be shown "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (quoting *TCI Grp.*, 244 F.3d at 698). "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.* at 1092–93; *TCI Grp.*, 244 F.3d at 696–97; *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009).

GNC's explanation for its failure to timely respond is that GNC's litigation counsel was under the mistaken belief that GNC's in-house legal department would sign a waiver of service, entitling GNC to sixty days, rather than thirty days, to respond to Plaintiffs' Complaint. (*See* Decl. of Charles H. Saul ¶ 8, Ex. 23 to Mot. to Set Aside, ECF No. 11-23). GNC provides a declaration from counsel attesting to this omission and stating that GNC has every intention of litigating this matter and seeking to transfer the case to the Western District of Pennsylvania. (*Id.* ¶¶ 8–9). As to the length of delay between GNC's counsel's appearance in this case and the Motion to Set Aside, GNC explains that addressing the meritorious-defense prong required time-intensive examination of hundreds of documents and the filing of seventeen exhibits and three declarations in support of its Motion. (Reply 5:6–21, ECF No. 13).

Plaintiffs assert that GNC's proffered reason is unworthy of credence due to lack of specificity as to when "the supposed error and misunderstanding was discovered in relation to the timing of [GNC's] motion." (Resp. 7:18–20). Plaintiffs point out that GNC filed the instant Motion a day after Kyllonen filed an answer to GNC's complaint in the PA Action. (*Id.* 5:17–20). According to Plaintiffs, this was an intentional decision, "presumably done to set up and

buttress[] the arguments in support of their motion to transfer which they intend to file if the Court sets aside the Clerk's default." (*Id.* 5:20–22, 7:20–25).

GNC's culpability for its untimely participation in this case is a close question. The Court generally agrees with Plaintiffs that GNC has not provided specifics as to when it discovered its mistaken belief that GNC's in-house counsel never waived service. The Court disagrees, however, that the timing of GNC's Motion suggests an improper attempt at legal gamesmanship. While Plaintiffs take great pains to highlight that GNC's Motion came a day after Kyllonen's answer in the PA Action, the Court cannot discern how GNC improperly benefited from its tardy participation. Plaintiffs' theory—that GNC waited on Kyllonen's answer in the PA Action to bolster its argument for transferring venue—is too speculative and attenuated to negate GNC's explanation. (Resp. 6:25–7:15).

Plaintiffs also cite several Ninth Circuit authorities for the proposition that a sophisticated attorney's actual notice of a summons and complaint and failure to promptly move the court weigh decisively in favor of a finding of culpability. (*Id.* 6:9–8:11) (citing *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). These cases, however, concern motions to set aside default *judgment*, which are governed by a stricter standard than motions to set aside a clerk's entry of default. *See Hawaii Carpenters' Tr. Funds*, 794 F.2d at 513 ("[T]he standards for setting aside entry of default under Rule 55(c) are less rigorous than those for setting aside a default."). In any event, the Ninth Circuit has since clarified that courts retain discretion to set aside default, even where a defaulting party's culpability has been established. *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011) ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not."); *see also*

*Leadership Studies, Inc. v. Readytomanage, Inc.*, No. 2:15-cv-09459-CAS-AJWx, 2016 WL 4425713, at *6 (C.D. Cal. Aug. 16, 2016) ("[I]n light of the Ninth Circuit's ruling in *Brandt*, . . . . even if defendants' conduct was culpable, this case is best decided on the merits and not based upon defendants' seemingly ill-advised decision not to file a responsive pleading until after the Clerk's entry of default.").

In sum, while the Court is not entirely satisfied with GNC's excuse for failing to respond to Plaintiffs' Complaint, the record does not support a finding that GNC's delay was a calculated effort to gain strategic advantage or manipulate the legal process. Accordingly, the culpability prong weighs marginally in favor of setting aside the clerk's entry of default.

### *2) Meritorious Defense*

"All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Rather, that question 'would be the subject of the later litigation.'" *Mesle*, 615 F.3d at 1094 (alteration in original) (citation omitted) (quoting *TCI Grp.*, 244 F.3d at 700). This approach is consistent with the principle that "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Grp.*, 244 F.3d at 700.

GNC raises defenses to Plaintiffs' claims and supports its arguments with seventeen exhibits and Declarations from GNC's Director of Franchise Relations and GNC's Franchising Senior Staff Accountant. (Mot. to Set Aside 7:3–9); (Will Decl., Ex. 21 to Mot. to Set Aside, ECF No. 11-21); (Houck Decl., Ex. 22 to Mot. to Set Aside, ECF No. 11-23). Plaintiffs, in their Response, do not address GNC's meritorious-defense arguments. (*See generally* Resp.).

GNC has met its relatively light burden of adducing facts that, if taken as true, would serve as meritorious defenses to Plaintiffs' claims. Most of Plaintiffs' causes of action are premised upon GNC's failure to fulfill contractual and fiduciary duties to supply accounting

information and services to Plaintiffs. (*See, e.g.*, Compl. ¶¶ 29–30, 33–34, 38–39, 45–46, 50). According to GNC, at no time did it serve as Plaintiffs' accountant or have fiduciary duties attendant to Plaintiffs' accounting needs. (Houck Decl. ¶ 4, ECF No. 11-23). GNC also states that because it sent monthly financial statements to Plaintiffs and provided access to GNC's intranet accounting portal, Plaintiffs were on notice of the franchises' financial circumstances at all relevant times. (*Id.*); (Email Correspondence, Ex. 13 to Mot. to Set Aside, ECF No. 11-16).

GNC further contends that Kyllonen, rather than GNC, is responsible for losses due to embezzlement because of Kyllonen's negligent management style. GNC claims that Kyllonen disregarded GNC's financial statements showing accounting discrepancies and failed to investigate what appeared to be theft. (*E.g.*, Email Correspondence, Exs. 13, 15 to Mot. to Set Aside, ECF Nos. 11-16, 11-18). Additionally, GNC asserts that Plaintiffs were in breach of the franchise agreements by failing to make required payments after being given a 30-day notice of right to cure. (Houck Decl. ¶¶ 7–8). GNC argues that, in light of Plaintiffs' failure to stay current on their payments, GNC was entitled to terminate the franchise agreements. (*See* Franchise Agreements ¶ 20(c), Exs. 1A, 2A to Mot. to Set Aside, ECF Nos. 11-2, 11-4). Finally, GNC objects to Plaintiffs' allegation that GNC was aware that Plaintiffs were in negotiations with prospective buyers but deliberately withheld relevant financial data that would have allowed those acquisitions to go forward. (Will Decl. ¶ 3, ECF No. 11-21). GNC states that "the evidence will show there never were any such prospective buyers." (*Id.*).

Taking these factual averments as true, GNC has meritorious defenses to the theories underlying Plaintiffs' claims. This factor weighs in favor of setting aside the clerk's entry of default.[1]

---

[1] As noted above, Plaintiffs did not respond to GNC's meritorious-defense arguments. (*See generally* Pls.' Resp., ECF No. 12).

### *3) Prejudice*

To determine whether the plaintiff would be prejudiced if the default judgment is set aside, "[t]he standard is whether his ability to pursue his claim will be hindered." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Setting aside a default must do more than simply delay resolution of the case to be considered prejudicial to the plaintiff. *TCI Grp.*, 244 F.3d at 701. Similarly, requiring a plaintiff to adjudicate a claim on the merits does not constitute prejudice. *Id.* Rather, the delay must result in some tangible harm, such as "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (quotation omitted).

According to GNC, Plaintiffs will suffer no prejudice because adjudication on the merits will merely delay final resolution. (Mot. to Set Aside 6:20–24). Plaintiffs counter that setting aside the default will cause them to incur additional costs and fees. (Resp. 8:12–28). Specifically, Plaintiffs anticipate that GNC will move the Court to transfer venue. (*Id.* 8:15–17). The outcome of that motion, according to Plaintiffs, will necessarily require additional briefing costs or costs associated with litigating parallel proceedings both here and in Pennsylvania. (*Id.* 8:18–28).

The Court finds that setting aside the entry of default and treating this matter on the merits will not prejudice Plaintiffs. The prejudicial effect Plaintiffs identify—the expense of briefing GNC's anticipated motion to transfer venue—would accompany any merits-based adjudication of this matter. Stated differently, Plaintiffs would bear the costs of litigating a motion to transfer just the same had GNC timely responded to Plaintiffs' Complaint. Consequently, this prejudice is not of the kind that would counsel against setting aside a clerk's entry of default. *See TCI Grp.*, 244 F.3d at 701 ("[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."); *see also Doolen v. Bank of Am.*, No. 2:14-cv-716-JCM-VCF, 2014 WL 3734381, at *2 (D. Nev. July 29, 2014)

("By setting aside the default, plaintiff is merely forced to litigate the lawsuit in the way he initially intended."). This factor, therefore, weighs in favor of granting GNC's Motion.

All told, GNC has demonstrated that its failure to respond was not motivated by an improper attempt to manipulate the proceedings in this case. Additionally, the Court finds that the presence of potentially meritorious defenses and lack of prejudice to Plaintiffs justify setting aside the clerk's entry of default. Therefore, the Court grants GNC's Motion subject to the conditions discussed below.

### B. Attorneys' Fees and Costs

Finally, Plaintiffs request that the Court condition setting aside default on GNC's payment of attorneys' fees and costs associated with obtaining default and payment of a $25,000 bond to cover discovery expenses. (Resp. 9:4–10:11). GNC responds that because it has demonstrated good cause for its tardy participation in this matter, an award of attorneys' fees and costs is inappropriate. (Reply 5:25–7:13).

The Court possesses "wide discretion to condition the setting aside of a default upon the payment of reasonable attorney's fees and costs." *Sundance Media Grp., LLC v. Yuneec USA, Inc.*, No. 2:18-cv-00388-APG-PAL, 2018 WL 6435887, at *2 (D. Nev. Dec. 7, 2018) (citing *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1547 (9th Cir. 1988) ("[I]t is appropriate to condition setting aside a default upon the payment of a sanction.")). The Court will condition vacatur of the clerk's entry of default upon GNC's payment of reasonable attorneys' fees and costs Plaintiffs incurred in moving for clerk's entry of default and opposing the instant Motion. *See id.; see also Gooch v. Las Vegas Bistro, LLC*, No. 2:14-cv-02189-APG, 2015 WL 5394060, at *2 (D. Nev. Sept. 14, 2015) (recognizing that, notwithstanding the defendant's lack of bad faith, meritorious defenses, and an absence of prejudice, "[i]t is unfair to force plaintiffs to bear the expense of litigating the default and the motion to set aside."). The Court, however, declines Plaintiffs' request to require GNC to post

a $25,000 bond to cover discovery costs because such costs would be attendant to any adjudication of this matter on the merits. *See id.* (declining to award costs and fees beyond those expended in litigating the default and motion to set aside; noting that the plaintiffs "would have incurred most of the requested costs and fees even if defendant timely answered the complaint."). As such, Plaintiffs' request for costs and fees is granted in part and denied in part.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that GNC's Motion to Set Aside Clerk's Entry of Default, (ECF No. 11), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk's Entry of Default, (ECF No. 9), is **VACATED**. This relief is conditioned upon GNC reimbursing Plaintiffs a reasonable amount for its attorneys' fees and costs incurred in obtaining the clerk's entry of default and opposing the motion to set aside the default. The parties must confer about the amount of those fees and costs within twenty-one (21) days of the entry of this Order. Should the parties agree on an amount, they shall file a stipulation. If no agreement is made, Plaintiffs shall file a motion—with supporting affidavits and appropriate documentation—requesting reasonable attorneys' fees and costs. That motion shall be filed within forty-five (45) days of entry of this Order. GNC will have fourteen (14) days thereafter to file any opposition to the requested amount. Once the appropriate fee has been determined, GNC must pay that amount within fourteen (14) days or the default will be reinstated.

**DATED** this  13   day of June, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge